# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

BRIDGET WALKER, et al.,

      Plaintiffs,

v.                                  Case No. 10-12596

CARMEN EVANS, et al.,

      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs brought suit to redress injuries they sustained in an event that can be properly labeled "tragic" and "calamitous." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 191, 202 (1989). On October 16, 2008, a shooting occurred near Henry Ford High School ("Henry Ford" or "the school") in Detroit, Michigan, leaving one student dead and a number wounded. The shooters were apprehended, convicted, and sentenced. They were, as well, defendants in this suit, and substantial default judgments have been entered against them. The only remaining Defendants are Carmen Evans, Colin Lowery, and Sharon Dennis, then employees of the Detroit Public School District ("DPS"), who Plaintiffs claim are liable because they acted in manner that either created or increased a risk that Plaintiffs would be exposed to an act of violence at the hands of the assailants.

Before the court is a motion for summary judgment filed by these remaining defendants. The motion is fully briefed, and the court determines that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2). Because Plaintiffs cannot establish an issue of

material fact with respect to their claims against Defendants Evans, Lowery, and Dennis, the court will grant the motion.

## I. BACKGROUND

Shortly after the end of the school day on October 16, 2008, Defendants Derryck Brantley, Devon Bell, and William Morton fired into a group of students walking away from Henry Ford High School, killing Christopher Walker and injuring Plaintiffs Kejuana McCants, Leon Merriweather, and Malik Slater. (McCants Dep. 22:24-24:23, Aug. 25, 2011, Dkt. # 65-5; Merriweather Dep. 25:24-28:11, Aug. 25, 2011, Dkt. # 65-7; Slater Dep. 30:1-7, 40:3-41:8, Dec. 20, 2011, Dkt. # 65-3.) The parties agree that the shooting took place on Evergreen Road between Fargo Street and Pembroke Street, which is approximately one block from the school building. (*See, e.g.*, Slater Dep. 40:13-41:21.)[1]

---

[1]In the "Statement of Material Facts" accompanying their summary judgment motion, Defendants averred that the shooting did not take place on school premises. (Defs.' Mot. Summ. J. 4, Dkt. # 65.) This statement was not rebutted by Plaintiffs in the recitation of the relevant facts in their response to the motion, although Plaintiffs claimed that they were "threatened . . . on the premises of Defendant Detroit Public Schools." (Pls.' Resp. to Defs.' Mot. Summ. J. 3, Dkt. # 67.)

In fact, instead of following the court's directive that a "response to a Rule 56 Motion must begin with a 'Counter-statement of Material Facts' if any of the moving party's proffered facts are contested," (Scheduling Order 7, Apr. 19, 2011, Dkt. # 29), Plaintiffs provided only a rambling narrative of about 45 lines of text, interliniated with more than twice that number of lines of testimony from the transcripts of various deponents, that reflects no attempt to coordinate with the moving party's facts, (*see id.* ("The paragraph numbering [of non-movant's 'Counter-statement of Material Facts'] must correspond to the first Statement of Facts.").) When Defendants pointed out in their reply brief that Plaintiffs had neglected to respond properly to Defendants' "Statement of Material Facts," Plaintiffs attempted to file a "Supplemental Brief" to correct the problem, but the proposed filing still did not comply with the scheduling order. (*See* Order Grant. in Part & Den. in Part Pls.' Mot. Leave File Supp. Br. & Sur-Reply 2 ("[I]nstead of contesting Defendants' proffered facts in correspondingly numbered paragraphs, Plaintiffs' 'Supplemental Brief' merely responds to two unidentified facts supposedly presented somewhere in Defendants' 'Statement of [Material] Facts' and then reproduces in numbered paragraphs the statement of facts

It is undisputed that, at the time of the shooting, Walker, Plaintiff McCants, and Plaintiff Merriweather were all students at Henry Ford, but Plaintiff Slater was not. (Slater Dep. 38:17-39:18.) Evidence suggests the shooting may have been gang related. (*See, e.g.*, DPS Undesirable Incident Report 3, Dkt. # 67-5.)

Earlier that day, October 16, 2008, at approximately 1:30 p.m., Defendants Evans and Lowery, DPS security guards, had broken up a fistfight in the hallway of the school between Walker and Defendant Morton. (Slater Dep. 31:18-36:14; Crim. Trial Tr. 10:14-11:5, Dkt. # 67-3.) After the fight, Defendants Evans and Lowery instructed both students to return to class. (*See* Slater Dep. 51:6-25.) An incident report prepared by a DPS employee indicates that, moments later, Defendant Morton was seen exiting the building while talking on a cell phone, asking "someone to come up here" in a manner that made DPS staff suspect gang activity. (DPS Undesirable Incident Report 3.) Plaintiffs allege that, based on Henry Ford's code of conduct, both Walker and Defendant Morton should have been suspended for the fight and sent to see the principal, Defendant Dennis. (McCants Dep. 48:15-49:5; Merriweather Dep. 40:15-23; Slater Dep. 42:9-43:8; B. Walker Dep. 70:18-74:2, Aug. 25, 2011, Dkt. # 65-8.) Instead, Plaintiffs claim, Walker and Defendant Morton were allowed to go about business as

contained in Plaintiffs' response brief." (citations omitted)).) In this context and others like it, Plaintiff's briefing was only minimally helpful, and the court would be justified in accepting as uncontroverted the many facts stated in Defendants' moving papers.

Nonetheless, the court independently observes—although it is not obligated to do so, (*see* Scheduling Order 7)—that there is a basis in the evidence to question whether or not the location of the shooting was on the school's grounds. (*Compare* Slater Dep. 41:22-23, *with* McCants Dep. 49:10-51:22, *and* Merriweather Dep. 42:7-43:15.) Construing the facts in the light most favorable to Plaintiffs as non-movants, the court will assume that the shooting happened on school property. As will be demonstrated later, that assumption will make no difference in the court's analysis.

usual, thereby freeing Defendant Morton to perpetrate the shooting later in the day.

(Merriweather Dep. 41:22-42:6; B. Walker Dep. 74:3-75:7.  *But see* Evans Dep. 68:10-

17, Aug. 25, 2011, Dkt. # 67-2.)

More generally, Plaintiffs aver that Henry Ford has been no stranger to violence,

fights, and gang activity.  (*See, e.g.*, Evans Dep. 68:18-69:10; Merriweather Dep. 18:12-

20:15.)[2]  For example, at yearly assemblies Defendant Dennis would speak about

quelling violence.  (McCants Dep. 43:3-44:20, 45:19-47:5; Merriweather Dep. 35:17-

37:23.)  The Henry Ford student body had also experienced multiple "lockdowns" in the

spring and fall of 2008, during which students were instructed to remain in locked

classrooms or common areas due to the rumored presence of a dangerous weapon on

school grounds.  (McCants Dep. 30:15-32:17, 47:10-48:14, 52:1-10; Merriweather Dep.

45:3-46:2.)  According to Plaintiffs, DPS and Henry Ford staff did not adequately

address these known, systemic problems prior to the shooting on October 16, 2008.

(McCants Dep. 52:11-53:21; Merriweather Dep. 46:3-47:3.)  However, neither Walker

---

[2]On this point, Plaintiffs also offer descriptions of gang violence in deposition testimony of two Detroit police officers who have regularly responded to disturbances at the school.  (*See* Lockhart Dep. 10:15-11:10, 13:14-16:3, Dec. 8, 2011, Dkt. # 67-6; Shepard Dep. 22:2-24, Dec. 8, 2011, Dkt. # 67-7.)  Defendants object to this evidence, claiming that "[t]hese depositions were noticed and taken by Plaintiffs' counsel without knowledge of Defendant's [sic] counsel," who "was never served with any subpoena for, or notice of, [the officers'] depositions."  (Defs.' Reply Supp. Mot. Summ. J. 2.)  Although Plaintiffs filed a sur-reply brief solely to refute these allegations, the court is unable to determine whether Plaintiffs' counsel fully complied with the Federal Rules of Civil Procedure and the court's discovery orders when conducting these depositions.  (*See* Email from Theophilus Clemons to Jon Hirsch (Nov. 23, 2011, 9:39 EST), Dkt. # 72-2, at 7.)  Regardless, the court need not delve into this issue.  Whether or not individual officers of the Detroit police force were aware of ongoing violence at Henry Ford has no bearing on whether Defendants, who were all employed by DPS, caused a redressable harm to Plaintiffs.  (*See* Lockhart Dep. 16:4-9 (admitting that officer had no knowledge of DPS policies and procedures).)

nor any of the other Plaintiffs complained about school safety nor reported any threats against them to any DPS employee, either in general or in connection with the shooting. (McCants Dep. 19:8-11, 27:3-14; Merriweather Dep. 15:12-15, 35:2-13, 39:10-15; Slater Dep. 20:23-21:10, 21:20-22:11, 49:17-21; B. Walker Dep. 27:8-29:6, 51:5-17.)

Plaintiffs Bridget Walker, as representative of the estate of Christopher Walker, McCants, Merriweather, and Slater initiated this suit against Defendants Brantley, Bell, and Morton (collectively, the "shooter Defendants"), as well as Defendants Evans, Lowery, and Dennis (collectively, the "DPS Defendants") and DPS itself, requesting damages for the injuries they sustained in the shooting. (2d Am. Compl. ¶¶ 1-31.) Plaintiffs' Second Amended Complaint states five counts: (I) "assault and battery" against the shooter Defendants; (II) "gross negligence" against the DPS Defendants and DPS; (III) a claim under 42 U.S.C. § 1983 against the DPS Defendants and DPS for violation of Plaintiffs' "substantive due process" rights; (IV) another § 1983 claim for "state created danger" based on DPS's merger of Henry Ford High School and Inkster High School "shortly before the shootings"; and (V) "public nuisance" against the DPS Defendants and DPS. (*Id.* ¶¶ 32-73.)

On December 22, 2010, the court granted a motion dismissing DPS as a Defendant and dismissing Count IV of the complaint in its entirety. (Op. & Order Grant. Pls.' Mot. Amend & Grant. Def. DPS's Mot. Dismiss, Dec. 13, 2010, Dkt. # 14.) Since that time, the court has also entered default judgments in favor of each Plaintiff against each of the shooter Defendants on the assault-and-battery claim. (*See* Order Grant. Pl. Slater's Renewed Mot. Default. J., Oct. 14, 2011, Dkt. # 56; Order Grant. Pl. Merriweather Default J., Aug. 25, 2011, Dkt. # 43; Order Grant. In Part Mot. Default J.,

5

Aug. 15, 2011, Dkt. # 42.)  On January 27, 2012, the DPS Defendants filed the instant

motion for summary judgment on Plaintiffs' remaining claims for gross negligence,

violation of substantive due process, and public nuisance.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when

"the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When

deciding a motion for summary judgment, the court "is not to 'weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial.'"  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "The central issue is 'whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law.'"  *Id.* at 497 (quoting

*Anderson*, 477 U.S. at 251-52).  "The judge's inquiry, therefore, unavoidably asks

whether reasonable jurors could find by a preponderance of the evidence that the

[movant] is entitled to a verdict . . . ."  *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the

absence of a genuine dispute as to a material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The burden then shifts to the nonmovant, who "must set forth specific

facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  It is

not enough for the nonmovant to "simply show that there is some metaphysical doubt as

to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).  Rather, the nonmovant must sufficiently allege a fact that, if proven, "would

6

have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

## III. DISCUSSION

### A. Section 1983 Claim

Plaintiffs first seek to hold the DPS Defendants liable under § 1983 for an alleged violation of their federal constitutional rights. "'To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Plaintiffs allege that the DPS Defendants deprived them of their

7

Fourteenth Amendment right "to bodily integrity and/or life" without due process of law because, "while acting under the color of state law," the DPS Defendants "were aware of, permitted, allowed, and facilitated the [shooting] by ignoring and failing to enforce school policy, state law, and state and federal guidelines regarding guns and violence," and they "failed to take proper, or any, remedial action, despite their knowledge of the threats to Plaintiffs and [the shooter Defendants'] previous . . . assault and . . . actions." (2d Am. Compl. ¶¶ 41, 44-45.)

### 1. Qualified Immunity

Because the DPS Defendants are "government officials performing discretionary functions," they are  "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, the DPS Defendants are entitled to qualified immunity for their actions unless: (1) "the facts that [Plaintiffs] ha[ve] alleged or shown make out a violation of a constitutional right"; and (2) "the right at issue was 'clearly established' at the time of [the DPS Defendants'] alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted) (citing *Saucier v. Katz*, 553 U.S. 194, 201 (2001)).  The DPS Defendants assert that they are entitled to qualified immunity because Plaintiffs cannot demonstrate a violation of their constitutional rights.

### 2. Violation of Plaintiffs' Due Process Rights: State-Created Danger

"As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *DeShaney*, 489 U.S. at 197.  However, a constitutional violation can occur when a state "cause[s] or

8

greatly increase[s] the risk of harm to its citizens without due process of law through its own affirmative acts." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998); *cf. DeShaney*, 489 U.S. at 201 ("While the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."). Plaintiffs contend that they can state a claim under this "state-created-danger theory" of liability. *Kallstrom*, 136 F.3d at 1066.[3] The court disagrees and finds that the DPS Defendants are entitled to qualified immunity.

As the court recounted in its opinion and order granting DPS's motion to dismiss, the elements of a state-created-danger claim are as follows:

> "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff."

*Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)). Although Plaintiffs' allegations and

---

[3]Count IV of Plaintiff's Second Amended Complaint, titled "Violation of Constitutional Rights 42 USC 1983—State Created Danger," was dismissed by the court when it granted DPS's motion to dismiss. Nevertheless, the court finds that Count III, titled "Violation of Constitutional Rights 42 USC 1983—Substantive Due Process," sufficiently avers a substantive-due-process claim against the DPS Defendants stemming from their alleged mishandling of the altercation between Walker and Defendant Morton. "Plaintiffs' theories do not precisely align with their counts," (Op. & Order Grant. Pls.' Mot. Amend & Grant. Def. DPS's Mot. Dismiss 8), and the dismissed count exclusively addressed a state-created-danger claim based on DPS's merger of Henry Ford and Inkster High School. Moreover, the DPS Defendants' motion for summary judgment anticipates and responds to Plaintiffs' arguments that the DPS Defendants are liable under a state-created-danger theory based on actions unrelated to the consolidation of the schools.

arguments are not the model of clarity, they appear to aver that the DPS Defendants knowingly created a danger to them by turning loose Walker and Defendant Morton after their fistfight on October 16, 2008, rather than suspending or expelling the combatants in accordance with Henry Ford's code of conduct.[4]  However, they fail to demonstrate sufficient facts to meet all three elements of a state-created-danger claim.

### a. Affirmative Act

The fatal flaw in Plaintiffs' claim is their inability to establish "an affirmative act by the state which either created or increased the risk that [they] would be exposed to an act of violence by a third party."  *Jones*, 438 F.3d at 690 (internal quotation marks omitted).  To satisfy this element, "[a] plaintiff must show that the state actor increased the risk of harm to the victim—namely, by showing that the government did more than 'merely returning a person to a situation with a preexisting danger.'"  *Id.* at 695 (quoting *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003)).  Recognizing that "it is sometimes difficult to distinguish action from inaction," the Sixth Circuit has directed courts to "focus[] on 'whether [the victim] was safer before the state action than he was after it.'"  *Koulta v. Merciez*, 477 F.3d 442, 445-46 (6th Cir. 2007) (second alteration in original) (quoting *Cartwright*, 336 F.3d at 493).

---

[4]It is somewhat unclear whether Plaintiffs allege that Defendant Dennis had a hand in the decision not to subject Walker and Defendant Morton to further disciplinary action, or whether they premise her liability on her role as Defendants Evans and Lowery's supervisor.  The court analyzes Plaintiffs' state-created-danger claim on the assumption that Defendant Dennis had some sort of direct involvement in the incident, as Plaintiffs aver that the school principal should have become involved in the aftermath of the fight.  Moreover, a claim of supervisory liability under § 1983 necessarily fails when, as the court concludes here, there is no underlying constitutional violation by the supervisor's subordinates.  *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006).

As in *Koulta*, it is difficult to ascertain whether the DPS Defendants' alleged misconduct amounts to inaction or an "affirmative act."  *See* 477 F.3d at 445 (questioning whether "[police] officer's decision to permit someone he knows to have been drinking to continue driving without administering a breathalyzer test" constitutes action or inaction).  Nonetheless, it is clear that Plaintiffs were no "safer before the [DPS Defendants'] action than [they] were after it."  *Cartwright*, 336 F.3d at 493 (emphasis omitted).  At most, the fight between Walker and Defendant Morton signaled to the DPS Defendants that Walker specifically, and the student body generally, may have been at risk of further violence at the hands of Defendant Morton and, potentially, his associates.  Plaintiffs speculate that this risk could have been minimized if the DPS Defendants had followed Henry Ford's code of conduct and suspended or expelled either or both students.  But they present no evidence that the action actually taken by the DPS Defendants—namely, breaking up the fight and allowing both boys to return to the general student population—actually *increased* the risk that Defendant Morton would perpetrate further violence at Henry Ford.

In this regard, the circumstances of this case closely resemble *McQueen*, where the Sixth Circuit found no risk-increasing affirmative act when the defendant-teacher left the plaintiff's decedent alone and unsupervised in a classroom with the armed student who would fatally shoot her.  As the *McQueen* court concluded under those facts, "[t]he danger to [the decedent] was created by [her assailant's] possession of a gun and [the decedent's] presence in the classroom with him.  This danger existed irrespective of [the defendant's] location."  433 F.3d at 466.  The same could be said here, where the danger to Plaintiffs resulted from the shooter Defendants' possession of guns, their

11

grudge against Walker, and their and Walker's presence at the school, all of which would have existed regardless of whether the DPS Defendants had intervened more assertively in the previous altercation between Walker and Defendant Morton.

Thus, this case is distinct from *Wilson v. Columbus Board of Education*, 589 F. Supp. 2d 952 (S.D. Ohio 2008), cited by Plaintiffs as an analogous case in which a court determined that the affirmative-act requirement was satisfied. There, the defendant, a school administrator, imposed an out-of-school suspension on the plaintiff-student, despite evidence that the plaintiff's stepfather had been molesting her for some time. *Id.* at 958-59. The plaintiff's stepfather raped her during school hours while she was serving the suspension, *id.* at 959, and the court found that the defendant had increased the risk of the assault by requiring the plaintiff to remain at home alone with her stepfather during the day, *id.* at 962. In contrast, the DPS Defendants here did not heighten the chance that Plaintiffs would be harmed in a shooting perpetrated by the shooter Defendants. While the *Wilson* defendant placed that plaintiff at greater risk by increasing her exposure to her potential attacker, nothing done by the DPS Defendants in any way affected the likelihood that the shooter Defendants would target Walker on school grounds. In essence, the DPS Defendants did nothing more than return Plaintiffs to "a situation with a preexisting danger." *Bukowski*, 326 F.3d at 709.

That Plaintiffs' claim is premised on inaction is further highlighted by their allegations that the incident between Walker and Defendant Morton was indicative of a "chronic problem" with gang violence that Defendants "were aware of" but "never dealt with." (Pl.'s Resp. to Def.'s Mot. Summ. J. 11-12, Dkt. # 67.) These arguments reveal that Plaintiffs seek to raise exactly the type of failure-to-intervene claim foreclosed by

12

*DeShaney*.  Plaintiffs' allegations boil down to a charge that harm befell them because the DPS Defendants failed to provide protection against the shooter Defendants.  The Due Process Clause, however, "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney*, 489 U.S. at 196.  Similarly unavailing is Plaintiffs' contention that the DPS Defendants' failure to discipline Walker and Defendant Morton contravened Henry Ford's code of conduct. That the DPS Defendants *could*, or even *should*, have intervened does not transform their failure to do so into an affirmative act giving rise to a cognizable due process violation.  *See id.* at 201-02; *Jones*, 438 F.3d at 692-93 (collecting cases).  Plaintiffs have failed to show that the DPS Defendants rendered them more susceptible to violence at the hands of the shooter Defendants, so they cannot establish the first element of a state-created-danger claim.

### b. Special Danger

Plaintiffs devote much of their response to the second element of their state-created-danger claim, arguing that they were placed specifically at risk when the DPS Defendants allowed Walker and Defendant Morton to carry on with their school day after their altercation.  And, it may well be argued that this action created a special danger with respect to Walker, who had engaged with Defendant Morton in an earlier fight.  *Cf. McQueen*, 433 F.3d at 468 (finding special danger posed to five students left unsupervised in room with armed classmate).  The court does not accept, however, that in this case Henry Ford's entire student population, of which Plaintiffs McCants and

13

Merriweather were members, constitutes a "limited and specifically definable group."
*Waller v. Trippett*, 49 F. App'x 45, 50 (6th Cir. 2002). In the opinion and order
dismissing the state-created-danger claim against DPS, the court determined that the
Henry Ford student body was more akin to "the public at large," *Kallstrom*, 136 F.3d at
1066, and found that Plaintiffs could not meet the special-danger requirement with
respect to their claim against DPS. (Op. & Order Grant. Pls.' Mot. Amend & Grant. Def.
DPS's Mot. Dismiss 15-16.) *But see McQueen*, 433 F.3d at 468 ("*[A]ssuming* that . . .
the relevant group included everyone in the school, the special danger requirement still
would be satisfied." (emphasis added)); *Gremo v. Karlin*, 363 F. Supp. 2d 771, 786
(E.D. Pa. 2005). The potential risk to Plaintiff Slater is even more attenuated, given that
he was not a student at Henry Ford when the shooting occurred. But even if some or all
of the Plaintiffs could demonstrate that they were especially endangered by the DPS
Defendants' conduct, they fail to show an issue of material fact with respect to the
remaining elements of their claim.

### c. State Culpability

In addition, Plaintiffs do not demonstrate an issue of material fact as to whether
the DPS Defendants "knew or should have known that [their] actions specifically
endangered [Plaintiffs]." *Jones*, 438 F.3d at 690. This requires, at minimum, a showing
of "deliberate indifference," that is, "the state actor 'must both be aware of facts from
which the inference could be drawn that a substantial risk of serious harm exists, and he
must draw the inference.'" *Arledge v. Franklin Cnty.*, 509 F.3d 258, 263 (6th Cir. 2007)
(quoting *McQueen*, 433 F.3d at 469). This standard "can 'be proven circumstantially by

14

evidence showing that the risk was so obvious that the official had to have known about it.'" *McQueen*, 433 F.3d at 469 (quoting *Bukowski*, 326 F.3d at 710).

While the Second Amended Complaint contains conclusory allegations that the DPS Defendants acted with "deliberate indifference," (2d Am. Compl. ¶ 48), Plaintiffs neglect to present any facts at all to support this assertion. Plaintiffs' evidence establishes that, in advance of the shooting, the DPS Defendants knew only that Walker and Defendant Morton had been in a fistfight that afternoon.[5] This fact does not suggest an obvious risk that Defendant Morton would later return to school, armed and accompanied by Defendants Bell and Brantley, and open fire into a crowd that included Walker. This is especially so considering that, while fights were an unfortunately common occurrence at Henry Ford, shootings (thankfully) were not. Plaintiffs cannot meet their burden of showing that the DPS Defendants had the requisite culpability needed to establish their liability under a state-created-danger theory.

Accordingly, Plaintiffs have not made out a violation of their Fourteenth Amendment substantive due process rights, let alone shown that their right to be free from state-created dangers was so clearly established that the DPS Defendants were on notice that their actions potentially violated that right. *See Pearson*, 555 U.S. at 232.

---

[5]The DPS incident report about Walker and Defendant Morton's altercation notes that a non-party DPS employee heard Defendant Morton "call[] someone to come up here" and, from that, speculated that the fight "might be gang related." (DPS Undesirable Incident Report 3.) This information, if it had been known to the DPS Defendants, arguably gets Plaintiffs closer to showing deliberate indifference, as it indicates that Defendant Morton may be soliciting the help of others to retaliate against Walker. However, this report was not prepared until October 22, 2011—almost a week after the shooting occurred—and there is no evidence that the DPS Defendants otherwise knew about Defendant Morton's phone call.

For these reasons, the DPS Defendants are entitled to summary judgment based on qualified immunity on Plaintiffs' § 1983 claim.

### B.  Gross Negligence and Public Nuisance Claims

The DPS Defendants argue that summary judgment is appropriate on Plaintiffs' state-law claims for gross negligence and public nuisance based on Michigan's governmental immunity statute.  Under that provision, the DPS Defendants, as "employee[s] of a governmental agency," are "immune from tort liability for an injury to a person . . . caused by [them] while in the course of employment," so long as: (1) they were acting or reasonably believed they were acting within the scope of their authority; (2) DPS was "engaged in the exercise or discharge of a governmental function"; and (3) their conduct did not "amount to gross negligence that is the proximate cause of the injury."  Mich. Comp. Laws § 691.1407(2).  In this context, "[g]ross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Id.* § 691.1407(7)(a).  "The phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury."  *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000).

The DPS Defendants contend that Plaintiffs' tort claims are barred because "the" proximate cause of Plaintiffs' injuries was the shooting, not their prior conduct. Plaintiffs, in response, do not contest the DPS Defendants' arguments as to proximate cause.  As a result, they have forfeited any opposition on this point, and summary judgment is appropriate on their gross negligence and public nuisance claims.  *See Brown v. Gojcaj Foods, Inc.*, No. 09-14537, 2011 WL 1980533, at *3 (E.D. Mich. May 20, 2011) ("If a party fails to respond to an argument raised in a motion the court can

16

assume that opposition to the motion is waived and the motion may be granted." (citing *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008))).

Plaintiffs attempt to distinguish the public nuisance claim as still viable, asserting without citation to authority that "[t]here is no statutory requirement . . . that the nuisance [be] the proximate cause." (Pls.' Resp. to Defs.' Mot. Summ. J. 18.) However, the Michigan Supreme Court has clearly held that nuisance claims are tort actions subject to governmental immunity. *Pohutski v. City of Allen Park*, 641 N.W.2d 219, 227 (Mich. 2002) ("There is no doubt that nuisance is a tort and that liability for nuisance would be within the scope of statutory governmental immunity . . . ." (quoting *Hadfield v. Oakland Cnty. Drain Comm'r*, 422 N.W.2d 205, 209 (Mich. 1988))). The DPS Defendants, therefore, cannot be held liable for public nuisance unless they acted with "gross negligence" that was "the proximate cause" of Plaintiffs' injuries. Mich. Comp. Laws § 691.1407(2)(c); *see Reh v. Laskowski*, Nos. 279102-07, 2009 WL 457928, at *4 n.1 (Mich. Ct. App. Feb. 24, 2009) (unpublished per curiam decision). As Plaintiffs have waived this argument, they cannot prevail.

## IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the DPS Defendants' motion for summary judgment [Dkt. # 65] is GRANTED.

        s/Robert H. Cleland                    
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  March 19, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 19, 2012, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522